FILED & JUDGMENT ENTERED
Christine F. Winchester

April 30 2025

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

Benjamin A. Kahn
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| In re: | |
| Applied Machinery Rentals, LLC | Chapter 7 |
| Debtor. | Case No. 23-30461 |
| Cole Hayes, Chapter 7 Trustee for the Bankruptcy Estate of Applied Machinery Rentals, LLC, | |
| Plaintiff, | |
| v. | Adv. No. 24-03014 |
| United States of America, | |
| Defendant. | |

**MEMORANDUM ORDER GRANTING PLANTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

This adversary proceeding came before the Court for hearing on March 19, 2025, on the Motion for Partial Summary Judgement filed by Cole Hayes, Chapter 7 Trustee for the Bankruptcy Estate of Applied Machinery Rentals, LLC ("Plaintiff") on August 15, 2024,

ECF No. 9,[1] and the Cross-Motion for Partial Summary Judgement filed by the United States of America ("Defendant") on September 20, 2024. ECF No. 16. Counsel for Plaintiff and counsel for Defendant appeared at the hearing. At the conclusion of the hearing, the Court took this matter under advisement. For the reasons stated herein, the Court will grant Plaintiff's Motion for Partial Summary Judgment and deny Defendant's Cross-Motion for Partial Summary Judgment.

**JURISDICTION AND AUTHORITY**

The district court has subject matter jurisdiction over the claims for which Plaintiff seeks partial summary judgment in this proceeding under 28 U.S.C. § 1334(b) as a proceeding arising under title 11. On April 14, 2014, the district court entered its Amended Standing Order of Reference, referring all proceedings arising under title 11 and arising in or related to a case under title 11 to the bankruptcy judges for the Western District of North Carolina. Under 28 U.S.C. § 155(a), the Honorable Albert Diaz, Chief Judge of the United States Court of Appeals for the Fourth Circuit, assigned and designated the above-signed judge to this Court and to the above-captioned case, together with all associated adversary proceedings. Case No. 23-30461, ECF No. 489, at 3. Thereafter, Chief Judge Laura T. Beyer entered an Order referring

[1] All "ECF" numbers refer to the above-captioned adversary proceeding (Adv. No. 24-03014) unless otherwise specified.

this case and all related proceedings to the above-signed as contemplated by the Order entered by the Honorable Albert Diaz. Id. at 1-2.

Plaintiff alleges and Defendant admits that this matter is a statutorily core proceeding under 28 U.S.C. § 157. ECF No. 1, ¶ 5 & ECF No. 6, ¶ 5. The parties have consented to this Court entering final orders and judgment in this adversary proceeding. Federal Rules of Bankruptcy Procedure 7008 and 7012(b) require that any complaint and answer, respectively, state whether the party consents to the entry of final orders or judgment by the bankruptcy court. Although neither Plaintiff's Complaint nor Defendant's Answer complies with these rules, the scheduling order entered in this case conspicuously provided that any party must file a motion to determine whether the Court could enter final orders within fourteen days of the date first set for the pretrial conference, or hearing on dispositive motions pursuant to Local Rule 7007-1, and that failure to file such motion would constitute consent to entry of final orders by this Court. ECF No. 7, ¶ 7. Neither party filed a timely motion to determine whether this Court may enter final judgment under the scheduling order. Therefore, the parties have consented to entry of final orders and judgment by this Court, and the Court has constitutional authority to enter final judgments in this proceeding. See Wellness Int'l Network, Ltd. v. Sharif, 575 U.S. 665, 678 (2015) (holding that "entitlement

to an Article III adjudicator is . . . ordinarily 'subject to waiver'") (citing Commodity Futures Trading Comm'n v. Schor, 478 U.S. 833, 848 (1986)). Furthermore, 11 U.S.C. §§ 106(a)(1) and (2) provide that the Court may hear and determine any issue arising with respect to the application of 11 U.S.C. § 548. Venue is proper under 28 U.S.C. § 1409.

**PROCEDURAL BACKGROUND**

On April 11, 2024, Plaintiff commenced this adversary proceeding by filing a complaint seeking to avoid and recover certain tax payments made by the principal of the debtor, Applied Machinery Rentals, LLC ("Debtor"), under 11 U.S.C. §§ 544, 548, and 550. ECF No. 1. On May 17, 2024, Defendant filed an answer, asserting that the tax payments are not recoverable because (1) there is no unsecured creditor that could sue under applicable non-bankruptcy law due to sovereign immunity;[2] and (2) Defendant

[2] The sovereign immunity defense is only viable with respect to Plaintiff's claims arising under 11 U.S.C. § 544(b), which permits the trustee to avoid any transfer of an interest of the debtor in property that is voidable under applicable law by an unsecured creditor. On March 26, 2025, while this matter was under advisement, the Supreme Court issued its Opinion in United States v. Miller, 145 S. Ct 839 (2025), holding that the waiver of sovereign immunity provided under 11 U.S.C. § 106(a) does not apply to state law claims acting as the applicable law under 11 U.S.C. § 544(b). Thereafter, the parties filed a Joint Stipulation of Voluntary Dismissal, dismissing Plaintiff's claims arising under 11 U.S.C. §§ 544 and 502(d). ECF No. 39. Both parties are seeking summary judgment solely under 11 U.S.C. §§ 548 and 550. These provisions of the Bankruptcy Code do not limit the trustee's ability to void transfers to the extent of the ability of an unsecured creditor. See 11 U.S.C. §§ 548 & 550. In Miller, the Supreme Court differentiated between §§ 544 and 548, referencing § 548's lack of an "'applicable' state law" requirement. 145 S. Ct. at 847 n.1. Additionally, both parties filed supplemental briefs agreeing that the holding in Miller does not affect the waiver of sovereign immunity under 11 U.S.C. § 106 with respect to Plaintiff's remaining claims under 11 U.S.C. §§ 548 and 550. ECF Nos. 40 & 41.

is a subsequent transferee that took for value, in good faith, and without knowledge of the voidability of the transfer under 11 U.S.C. § 550(b). ECF No. 6, at 6-7. On August 15, 2024, Plaintiff filed its Motion for Partial Summary Judgment, requesting that the Court enter summary judgment as to the voidability and recoverability of one of the tax payments under 11 U.S.C. §§ 548 and 550. ECF No. 9. On September 20, 2024, Defendant filed its Cross-Motion for Partial Summary Judgement, requesting that the Court enter summary judgment in favor of Defendant on the basis that Defendant is a subsequent transferee of the payment that took for value, in good faith, and without knowledge of the voidability of the transfer, and thus that the payment is not recoverable under 11 U.S.C. § 550(b).[3] ECF No. 16.

**FACTS**[4]

Debtor filed the above-captioned chapter 7 case on July 17, 2023. Case No. 23-30461, ECF No. 1. Prepetition, Garth Errol McGillewie Jr. acted as Debtor's sole member, manager, and

[3] Alternatively, Defendant moved for partial summary judgment on the basis that Plaintiff had not met its burden of demonstrating voidability under 11 U.S.C. § 548(a)(1)(B) because Plaintiff had not demonstrated that Debtor was insolvent at the time of the payment. ECF No. 16-1, at 10-12. After Defendant filed its Cross-Motion for Partial Summary Judgment, Plaintiff filed additional evidence in support of Debtor's insolvency at the time of the payment. *See* ECF Nos. 23 & 27. After Plaintiff filed this additional evidence, Defendant filed its Reply in support of its Cross-Motion for Partial Summary Judgment with no further evidence or argument as to Debtor's solvency. *See* ECF No. 33. At the hearing, Defendant conceded that Plaintiff's additional evidence of insolvency was properly before the court and that Debtor was insolvent at the time of the payment. ECF No. 35, at 00:46:00-00:47:00; *see also infra* n.7.

[4] The Court has reviewed the record, and the following facts are uncontested.

principal. ECF No. 1, ¶ 10 & ECF No. 16-1, ¶ 2. On September 16, 2021, Debtor, acting through McGillewie, obtained a commercial loan from Security Bank & Trust Company ("Security Bank") in the principal amount of $1,520,036.00. ECF No. 10-1, at 2-4. In connection with the loan, McGillewie executed certain loan documents on behalf of Debtor, including a Commercial Promissory Note and Loan Agreement, Commercial Loan Settlement Statement, Commercial Security Agreement, Customer Identification Verification, and Business Purpose Statement. ECF No. 10-1 (collectively, the "Loan Documents"). On September 16, 2021, Security Bank funded the loan to Debtor[5] by wiring $1,500,000.00 directly to McGillewie's individual account with SouthState Bank (the "SouthState Account"). ECF No. 10-2. On September 17, 2021, the day after the loan was funded, McGillewie caused SouthState Bank to issue a cashier's check directly from the SouthState Account, payable to the Internal Revenue Service (the "IRS") in the amount of $1,052,682.67 (the "2021 Tax Payment"). ECF No. 10-4.[6] The IRS received the cashier's check on September 21, 2021, and applied the funds to the personal federal tax obligations of

[5] The Loan Documents identify Debtor as the borrower, and the Commercial Promissory Note and Loan Agreement, Customer Identification Verification, and Business Purpose Statement all state that the purpose of the loan was to fund Debtor's business operations. ECF No. 10-1, at 2, 12, 13.

[6] In addition to the 2021 Tax Payment, Defendant also received the following payments from McGillewie: (1) $939,800.83 on April 17, 2019 (which was dishonored on June 3, 2019); and (2) $187,931.56 on April 23, 2019. ECF No. 1, ¶ 31 & ECF No. 6, ¶ 31.

McGillewie and his wife. ECF Nos. 1, ¶¶ 31-32 & 6, ¶¶ 31-32. Debtor was insolvent on the date of the transfer. ECF No. 10, ¶¶ 54-61; ECF Nos. 23 & 27.[7] McGillewie made the 2021 Tax Payment with the actual intent to defraud Debtor's creditors.[8]

**STANDARD OF REVIEW**

Summary judgment is appropriate when the moving party "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056. "A fact is 'material' if proof of its existence or non-existence would affect disposition of the case under applicable law. An issue of fact is 'genuine' if the evidence offered is such that a reasonable jury might return a verdict for the non-movant." Wai Man Tom v. Hosp. Ventures LLC, 980 F.3d 1027, 1037 (4th Cir. 2020) (quoting Anderson v. Liberty

[7] Insolvency is a question of fact. In re Heilig-Meyers Co., 328 B.R. 471, 475 (E.D. Va. 2005). Questions of insolvency are not often capable of resolution on summary judgment, Vivos Acquisitions, LLC v. Health Care Res. Network, LLC, No. 119CV1606RDATCB, 2022 WL 995389, at *4 (E.D. Va. Mar. 31, 2022), but Defendant conceded at the hearing that Debtor was insolvent on the date of the 2021 Tax Payment. ECF No. 35, at 00:46:00-00:47:00.

[8] Plaintiff contends that the timing and circumstances of the 2021 Tax Payment constitute sufficient, unrebutted, circumstantial evidence to establish that Debtor made the 2021 Tax Payment with the actual intent to defraud its creditors. ECF No. 9, at 2. Whether a debtor possessed actual intent to defraud is a question of fact which courts look to "badges of fraud" to determine. In re Summit Place, LLC, 298 B.R. 62, 70 (Bankr. W.D.N.C. 2002). It is unnecessary for the Court to determine whether the record establishes that the 2021 Tax Payment was made with the actual intent to defraud creditors because Defendant conceded at the hearing that Debtor made the 2021 Tax Payment with the actual intent to defraud its creditors. ECF No. 35, at 00:40:00-00:41:00.

Lobby, Inc., 477 U.S. 242, 248 (1986)). In considering a motion for summary judgment, the Court must construe the "facts and inferences drawn therefrom in the light most favorable to the nonmoving party." Seabulk Offshore, Ltd. v. Am. Home Assur. Co., 377 F.3d 408, 418 (4th Cir. 2004). Where there are cross motions for summary judgment, as in this case, "the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Philip Morris Inc. v. Harshbarger, 122 F.3d 58, 62 n.4 (1st Cir. 1997)). "As to those elements on which it bears the burden of proof at trial, a movant is only entitled to summary judgment 'if the proffered evidence is such that a rational factfinder could only find for [the movant].'" In re Caceres, No. 18-80776, 2023 WL 2543713, at *3 (Bankr. M.D.N.C. Feb. 27, 2023) (quoting Smith v. Ozmint, 578 F.3d 246, 250 (4th Cir. 2009)). If there is a genuine issue of material fact, the court must deny both motions, "[b]ut if there is no genuine dispute and one or the other party is entitled to prevail as a matter of law, the court will render judgment." 10A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2720 (4th ed. 2021).

## DISCUSSION

I. The 2021 Tax Payment was a transfer of an interest of the debtor in property and is avoidable under 11 U.S.C. § 548(a)(1)(A) and (B).

Section 548(a)(1) provides that a trustee may avoid certain transfers of an interest of the debtor in property.[9] There is no factual dispute that the 2021 Tax Payment was a transfer of an interest of Debtor in property. A transfer is "of an interest of the debtor in property" when the transfer is of "property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." Ivey v. First Citizens Bank & Tr. Co., 539 B.R. 77, 82 (M.D.N.C. 2015) (internal quotations omitted). "Section 548's phrase 'an interest of the debtor in property,' . . . 'has generally been held to be the equivalent of "property of the estate."'" Mann v. LSQ Funding Grp., L.C., 71 F.4th 640, 646 (7th Cir. 2023) (quoting 5 Collier on Bankruptcy ¶ 548.03 (16th ed.)). Property of the estate

[9] 11 U.S.C. § 548(a)(1) provides:

> The trustee may avoid any transfer . . . of an interest of the debtor in property . . . incurred by the debtor, that was made . . . on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> (A) made such transfer . . . with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made . . . , indebted; or
>
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer . . . ; and
>
> (ii)(I) was insolvent on the date that such transfer was made . . . .

includes "all legal or equitable interests of the debtor in property as of the commencement of the case" "wherever located and by whomever held." 11 U.S.C. § 541(a)(1) (emphasis added). "This definition of estate property is broad and will reach to bring within the estate every conceivable interest that the debtor may have in property." In re Osterwalder, 407 B.R. 291, 294 (Bankr. N.D. Ohio 2008).

The estate's interest in property is determined under applicable state law, which in this case is South Carolina law. See Butner v. United States, 440 U.S. 48, 55 (1979); In re Star Dev. Grp., LLC, No. 24-1722, 2025 WL 1135009, at *4 (4th Cir. Apr. 17, 2025) ("'[b]ecause property interests are generally created and defined by state law, we look to state law to determine the nature of a debtor's interest in the property at issue'") (quoting In re FirstPay, Inc., 773 F.3d 583, 590 (4th Cir. 2014)).

South Carolina law recognizes that a manager of a manager-managed limited liability company has a fiduciary duty to such company and holds in trust for the company any property derived by the manager in the conduct of the company's business or from a use of the company's property. See, e.g., In re JK Harris & Co., LLC, 512 B.R. 562, 567 (Bankr. D.S.C. 2012) ("The duty of loyalty requires that the manager: account to the company and to hold as trustee for it any property, profit, or benefit derived by the

members in the conduct . . . of the company's business.”) (citing S.C. Code Ann. §§ 33-44-409(b)(1) & (2)).

In this case, it is uncontested that the loan was incurred by Debtor for the purpose of funding Debtor’s business operations, that the proceeds of the loan were disbursed directly to McGillewie’s account, and that the next day, McGillewie used those proceeds to make the 2021 Tax Payment. Defendant concedes as it must that the funds in McGillewie’s account were the proceeds of the loan. See ECF No. 16-1, ¶¶ 1-9. Under South Carolina law, McGillewie held the proceeds of the loan in trust for Debtor. See S.C. Code Ann. § 33-44-409(b)(1). Even if South Carolina law did not provide that the proceeds were held in trust, the proceeds were the direct, traceable proceeds of the loan to Debtor, and Debtor’s property interest in the loan proceeds remained. Cf. In re U.S.A. Diversified Prods., Inc., 193 B.R. 868, 873-74 (Bankr. N.D. Ind. 1995) (holding funds transferred from the debtor’s Merrill Lynch account to the trust account of the attorneys for the principal remained debtor’s property and were subject to turnover under 11 U.S.C. § 542(a)). The fact that the loan proceeds were wired from the loan closing directly to McGillewie’s personal account did not divest Debtor of its property interest in those proceeds.

At least one other court has recognized the debtor’s continuing property interest in its funds held in the principal’s

individual account. In In re Fox Bean Co., Inc., 287 B.R. 270 (Bankr. D. Idaho 2002), aff'd sub nom. In re Fox Bean Co., 144 F. App'x 697 (9th Cir. 2005), the officer and director of the chapter 7 debtor ("Fox") held a personal checking account that he shared with his wife. 287 B.R. at 273. Although the debtor was a valid corporation and separate legal entity, the Foxes intentionally conducted the debtor's banking activity through their personal account. Id. at 274. Fox deposited personal funds into the personal account and used company funds in the account to pay off personal indebtedness. Id. at 275. The chapter 7 trustee sought to recover a transfer that Fox made from the Fox Account to pay off personal indebtedness to a bank under 11 U.S.C. §§ 548 and 550. Id. at 275-76. The defendant bank contended that the transfer was not avoidable because there was no transfer of the debtor's property, as the transferred funds came from the principal's personal account. Id. at 276. Applying Idaho law, the Court held that:

> [C]orporate officers and directors, such as Mr. Fox, are the agents of the corporation. As agents, corporate officers and directors are subject to the general principles of agency law, including the fiduciary duties of agents. Because of the existence of an agency, an officer or director is a fiduciary for the corporation, and as an agent, the officer or director holds a principal's property for the benefit of the principal. By holding a principal's property, the agent does not divest the principal of its interests in the property.

Id. at 279 (internal citations and parentheticals omitted). The Court found that the funds deposited into the principal's personal account remained the debtor's property, and the act of depositing the funds into the personal account did not transfer ownership of the funds to the Foxes personally. Id. at 280. Therefore, the loan proceeds in McGillewie's account constituted an interest of Debtor in property.

The other elements of 11 U.S.C. § 548(a)(1) are not in dispute. The 2021 Tax Payment was made on September 17, 2021, ECF No. 10-4, within two years of Debtor filing the petition on July 17, 2023. See Case No. 23-30461, ECF No. 1. Defendant conceded at the hearing that Debtor made the 2021 Tax Payment with the actual intent to defraud its creditors. ECF No. 35, at 00:40:00-00:41:00. Therefore, Plaintiff is entitled to summary judgment as to the voidability of the 2021 Tax Payment under 11 U.S.C. § 548(a)(1)(A).

Plaintiff is alternatively entitled to summary judgment as to the voidability of the 2021 Tax Payment under 11 U.S.C. § 548(a)(1)(B). Defendant concedes that Debtor was insolvent on the date of the 2021 Tax Payment. Id. at 00:46:00-00:47:00. It is undisputed that Defendant applied the 2021 Tax Payment toward the personal federal tax obligations of McGillewie and his wife, ECF Nos. 1, ¶¶ 31-32 & 6, ¶¶ 31-32, and it is well-established that a debtor receives less than reasonably equivalent value when paying

personal obligations of its principal. See, e.g., In re Alper-Richman Furs, Ltd., 147 B.R. 140, 157 (Bankr. N.D. Ill. 1992); In re Lucas Dall., Inc., 185 B.R. 801, 807-08 (B.A.P. 9th Cir. 1995); In re Maui Indus. Loan & Fin. Co., 483 B.R. 346, 352 (Bankr. D. Haw. 2012). Therefore, Plaintiff is alternatively entitled to summary judgment as to the voidability of the 2021 Tax Payment under 11 U.S.C. § 548(a)(1)(B).

II. Plaintiff may recover the funds from Defendant under 11 U.S.C. § 550(a)(1) as the initial transferee of the 2021 Tax Payment.

Having determined that the funds in McGillewie's account remained the property of Debtor, Defendant was the initial transferee for purposes of 11 U.S.C. § 550. It is this transfer that Plaintiff seeks to avoid. Cf. Merit Mgmt. Grp., LP v. FTI Consulting, Inc., 583 U.S. 366, 381 (2018) (applying 11 U.S.C. § 546(e) and holding that, when considering defenses and exceptions to the avoidance of transfers under 11 U.S.C. § 548, "the transfer that the trustee seeks to avoid [is] the relevant transfer for consideration"). Sections 550(a) and (b) do not require that the property of the debtor never have been subject to any "transfer" as broadly contemplated by 11 U.S.C. § 101(54). If that were so, a debtor could transfer funds from one account of the debtor to another, and then any transferee from the second account would be a subsequent transferee. Instead, as discussed above, the concept of an interest of the debtor in property is broad, and Debtor's

interest in the funds continued in its manager's account from which Defendant received a direct transfer.

Even if the Court were required to consider both transfers, the defense under § 550(b) would not be available in this case because, for many of the same reasons that Debtor's property interest remained in the loan proceeds in McGillewie's account, McGillewie was not an initial transferee as contemplated by that section. Section 550(b) provides that to the extent that a transfer is avoidable under 11 U.S.C. § 548, a subsequent transferee has an affirmative defense to recovery if such transferee accepted the transfer for value, in good faith, and without knowledge of the voidability of the transfer. Plaintiff contends that Defendant was the initial transferee of the funds used for the 2021 Tax Payment. ECF No. 11, at 22-23. Defendant disagrees, contending that McGillewie became the initial transferee when the loan was deposited into the SouthState Account because the account was in his individual name, and he had sole signature authority over it. ECF No. 16, at 4-6. Therefore, Defendant contends that it became a subsequent transferee when McGillewie sent the cashier's check that was drawn against the SouthState Account. Id.

The Bankruptcy Code does not define the term "initial transferee." Courts, including the Fourth Circuit, employ the definition of "initial transferee" set forth by the Seventh Circuit

in Bonded Fin. Servs., Inc. v. Eur. Am. Bank, 838 F.2d 890 (7th Cir. 1988). According to the Bonded Court, "transferee" must mean something different from "possessor" or "holder" or "agent," instead, transferee status requires "dominion over the money or other asset, the right to put the money to one's own purposes." Id. at 893-94. In adopting the Seventh Circuit's approach, the Fourth Circuit held that "a principal or agent does not have 'dominion and control' over funds unless he or she has 'legal dominion and control,' in other words, the 'right to put those funds to one's own purpose.'" In re Se. Hotel Props. Ltd. P'ship, 99 F.3d 151, 155-56 (4th Cir. 1996). A principal often has the *ability* to direct funds to personal purposes, but this ability does not equate to a *right* to do so:

> Many principals presumably exercise de facto control over the funds of the corporations they manage. They can choose to cause their corporations to use those funds appropriately or inappropriately. The distinction is only relevant to the question whether the principal's conduct amounted to a breach of duty to the corporation.

Rupp v. Markgraf, 95 F.3d 936, 941 (10th Cir. 1996). Importantly, "[t]he issue under § 550 is to what extent the principal . . . exercised control over the disputed funds *after* the funds left the debtor. Determining the initial transferee of a transaction is necessarily a temporal inquiry; there must be a transfer before there can be a transferee." Id. To this end, the Bonded Court distinguished between a one-step and a two-step transaction. 838

F.2d at 880. In a one-step transaction, the principal causes the company to issue funds payable directly to the principal's creditor, making the principal's creditor the initial transferee. Id. In a two-step transaction, the principal first causes the company to issue funds to the principal, and the principal then pays its creditor, making the principal the initial transferee and the principal's creditor a subsequent transferee. Id.

In this case, there was no transfer from Debtor to McGillewie. The bank disbursed the Debtor's loan proceeds directly to its agent and manager McGillewie. As stated above, the fact that the company's funds were deposited into a principal's personal account does not establish that the company's property interest in those funds was transferred to the principal. See Fox Bean, 287 B.R. at 280. Likewise, that a company's funds are deposited into a principal's personal account does not mean that the principal has "legal dominion and control" over the funds as contemplated by Se. Hotel. See Fox Bean, 287 B.R. at 282 (concluding that the transfer of the debtor's funds from the principal's account to the bank to pay the principal's personal indebtedness was the initial transfer for purposes of 11 U.S.C. § 550(a)(1)).[10]

[10] After determining that the bank was the initial transferee, the Fox Bean Court went on to find that even if the bank were a mediate transferee, the transfer would still be avoidable under 11 U.S.C. § 550(a)(2) because the bank had knowledge of the avoidability of the transfer. Fox Bean, 287 B.R. at 283 (citing In re Video Depot, 127 F.3d at 1199 for the proposition that a principal may establish legal dominion and control by first directing a transfer into his

Because Debtor's property interest in the proceeds of the loan remained even after the funds were deposited in McGillewie's account, Defendant was a direct and initial transferee of property in which Debtor continued to hold an interest. As an agent of Debtor, McGillewie held the proceeds of the loan for the benefit of Debtor and did not have the *right* to apply those proceeds to his own purpose. See S.C. Code Ann. § 33-44-409(b)(1). Of course, McGillewie had the *ability* to and in fact did apply the proceeds to his own purpose, but this fact is not relevant to the question of whether McGillewie was the initial transferee of "an interest of the debtor in property." 11 U.S.C. § 548(a)(1); see also Se. Hotel, 99 F.3d at 156; Rupp, 95 F.3d at 941 ("The extent to which a principal has de facto control over the debtor before the funds are transferred from the debtor, and the extent to which the principal uses this control for his or her own benefit in causing the debtor to make a transfer, are not relevant considerations in determining the initial transferee under § 550.").[11] The proceeds

personal bank account and then making the payment from his personal account to the creditor). In this case, McGillewie did not direct a transfer from Debtor into his personal account. Instead, McGillewie took out the loan as agent of Debtor and directed the proceeds of the loan directly into his personal account. Thus, as explained herein, McGillewie never had legal dominion and control over the proceeds of the loan. Moreover, because the Court determines for the same reasons as the Fox Bean Court that McGillewie was not the initial transferee, the Court need not address Defendant's knowledge of the avoidability of the 2021 Tax Payment.

[11] It is on this point that Defendant's argument falters by conflating legal control with de facto control, contending that because McGillewie could and did use the proceeds of the loan for personal purposes through his signature authority over his personal account, he necessarily had legal control over the

of the loan went from being held in the SouthState Account by McGillewie as agent for Debtor directly to Defendant. See ECF No. 10-4.[12] Therefore, the transfer of the 2021 Tax Payment to Defendant was a direct and initial transfer of an interest in property of Debtor.

Because Defendant was not a subsequent transferee, the Court need not address Defendant's claims of value given, good faith, and lack of knowledge of the voidability of the transfer, and Plaintiff is entitled to summary judgment as to the inapplicability of the 11 U.S.C. § 550(b) defense.

NOW, THEREFORE, it is hereby ORDERED, ADJUDGED, AND DECREED that Plaintiff's Motion for Partial Summary Judgment, ECF No. 9,

---

proceeds of the loan. See ECF No. 16, at 5-6. The cases Defendant cites in support of this contention are factually distinguishable from the facts of this case. In those cases, the courts were not asked to determine whether the funds held by the principal remained the debtor's property. See, e.g., In re Anton Noll, Inc., 277 B.R. 875 (B.A.P. 1st Cir. 2002) (finding the principal was the initial transferee where the debtor corporation itself issued a check payable to cash to its principal which the principal used to pay personal liabilities). In contrast, McGillewie obtained the loan on behalf of Debtor for the purpose of funding Debtor's business operations and directly received the proceeds of the loan as an agent of Debtor, thereby holding those proceeds in trust for Debtor. See S.C. Code Ann. § 33-44-409(b)(1).

[12] 11 U.S.C. § 101(54) defines the term "transfer" broadly to include any transfer of an interest in property, including a deposit in a bank account. Ivey, 539 B.R. at 82 (citing S. Rep. No. 95-989, at 27 (1978)). Thus, Debtor effectuated a "transfer" under 11 U.S.C. § 101(54), when McGillewie caused the loan to be deposited into the SouthState Account. However, 11 U.S.C. § 548 requires a transfer "of an interest of the debtor in property." As previously explained, "[t]he phrase 'interest of the debtor in property' 'is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings.'" Id. (quoting In re BeaconVision Inc., 340 B.R. 674, 677 (Bankr. D.N.H. 2006)). Since Debtor's interest in the proceeds of the loan was never transferred to McGillewie, Debtor's interest in the proceeds of the loan remained property that would have been part of the estate until it was transferred to Defendant.

is granted to the extent provided herein, and Defendant's Cross-Motion for Partial Summary Judgment, ECF No. 16, is denied. The Court will conduct a further pre-trial scheduling video conference in this proceeding on June 4, 2025, at 10:00 a.m.

**SO ORDERED**.

This Order has been signed Electronically. The Judge's signature and Court's seal appear at the top of the Order

United States Bankruptcy Court

Parties to be Served
24-03014

All parties to this adversary proceeding.