No. 3:25-cv-00395-FDW

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

In re Applied Machinery Rentals, LLC

UNITED STATES OF AMERICA, Appellant,

v.

COLE HAYES, CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATE OF APPLIED MACHINERY RENTALS, LLC, Appellee.

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

**BRIEF OF APPELLANT UNITED STATES OF AMERICA**

ANNA A. MILLER
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 227, Ben Franklin Station
Washington, DC 20044
Tel: (202) 514-6068
Fax: (202) 514-6866
Email: Anna.A.Miller@usdoj.gov

**TABLE OF CONTENTS**


TABLE OF CONTENTS ........ i

STATEMENT OF THE ISSUE AND STANDARD OF REVIEW ........ 1

STATEMENT OF APPELLATE JURISDICTION ........ 2

STATEMENT OF THE CASE ........ 3

A. Factual Background ........ 3

B. Procedural History ........ 4

SUMMARY OF THE ARGUMENT ........ 6

ARGUMENT ........ 7

A. The Bankruptcy Court erred by failing to properly apply the "legal dominion and control" test. ........ 7

1. This case involves precisely the type of two-step transaction contemplated in *Bonded*. ........ 9

2. McGillewie exercised legal dominion and control over the funds. ........ 13

B. The Bankruptcy Court misconstrued the "interest of the debtor in property" requirement of § 548 ........ 18

C. McGillewie did not receive the funds as an agent of the Debtor. ........ 21

CONCLUSION ........ 25

CERTIFICATE OF COMPLIANCE ........ 28

STATEMENT REQUESTING ORAL ARGUMENT ........ 29

**CERTIFICATION REGARDING THE USE OF ARTIFICIAL INTELLIGENCE** ........ 30

CERTIFICATE OF SERVICE ........ 31

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Appalachian Finishing Works*,
244 B.R. 771 (E.D. Tenn. 2000) .....24

*In re Ballantyne Brands, LLC*,
656 B.R. 117 (Bankr. W.D.N.C. 2023) .....8

*Begier v. I.R.S.*,
496 U.S. 53 (1990) .....19

*In re Bestwall, LLC*,
99 F.4th 679 (4th Cir. 2024) .....2

*Bonded Fin. Servs. v. European Am. Bank*,
838 F.2d 890 (7th Cir. 1988) .....*passim*

*In re Chase & Sanborn Corp.*,
904 F.2d 588 (11th Cir. 1990) .....15

*In re Coutee*,
984 F.2d 138 (5th Cir. 1993) .....23

*Engell v. Sheetz*,
No. 2:16-cv-0005-BR, 2016 WL 3579011 (E.D.N.C. June 24, 2016) .....2

*In re Fox Bean Co., Inc.*,
287 B.R. 270 (Bankr. D. Idaho 2002) .....*passim*

*In re Harbour*,
845 F.2d 1254 (4th Cir. 1988) .....23

*In re Int'l Admin. Servs., Inc.*,
408 F.3d 689 (11th Cir. 2005) .....23, 24

*Ivey v. First Citizens Bank & Trust Co.*,
539 B.R. 77 (M.D.N.C. 2015) .....19

*In re Jenkins*,
2013 WL 4805731 (Bankr. W.D.N.C. Sept. 6, 2013) ....................................23, 25

*Joseph v. Cooper*,
539 B.R. 489 (W.D.N.C. 2015) ..................................................................1

*In re KZK Livestock*,
191 F.3d 456 (7th Cir. 1999) ..............................................................16, 17

*Mann. V. LSQ Funding Group., L.C.*,
71 F.4th 640 (7th Cir. 2023) ...................................................................22

*In re Meredith*,
527 F.3d 372 (4th Cir. 2008) ....................................................................8

*Merit Mgmt. Grp., LP v. FTI Consulting, Inc*.,
583 U.S. 366 (2018)..................................................................................7

*Miller v. United States*,
604 U.S. ___, 2025 WL 906502 (2025) .......................................................5

*In re Mortgage Stores, Inc.*,
773 F.3d 990 (9th Cir. 2014) ................................................................8, 25

*In re Nieves*,
648 F.3d 232 (4th Cir. 2011) ....................................................................8

*In re Pretty Girl, Inc.*,
644 B.R. 298 (Bankr. S.D.N.Y. 2022).......................................22, 23, 25

*In re Railworks Corp.*,
760 F.3d 398 (4th Cir. 2014) ....................................................................9

*In re Redf Mktg., LLC*,
536 B.R. 646 (Bankr. W.D.N.C. 2015) .......................................................22

*Richardson v. I.R.S.*,
277 B.R. 875 (1st Cir. BAP 2002)...............................................................9

*In re Rollaguard Security, LLC*,
591 B.R. 895 (Bankr. S.D. Fla. 2018) ...................................................10, 11

*Rupp v. Markgraf*,
95 F.3d 936 (10th Cir. 1996) ....................................................14, 15, 21, 26

*In re Se. Hotel Props. Ltd. P'ship*,
99 F.3d 151 (4th Cir. 1996) ..........................................................6, 8, 9, 23

*In re Video Depot, Ltd.*,
127 F.3d 1195 (9th Cir. 1997) ..........................................................................26

*In re Walldesign*,
872 F.3d 954 (9th Cir. 2017) .....................................................................16, 26

*In re Whitacre Sunbelt, Inc.*,
200 B.R. 422 (Bankr. N.D. Ga. 1996) ................................................................12

*In re Whitley*,
2013 WL 486782 (Bankr. W.D.N.C. Feb. 7, 2013) ..........................................23

*In re Whitley*,
848 F.3d 205 (4th Cir. 2017) ...................................................................9, 10, 11

**Statutes**

11 U.S.C. § 101(54) ...................................................................................12, 13

11 U.S.C. § 101(54)(D)...................................................................................9, 12

11 U.S.C. § 106(a)'s.............................................................................................5

11 U.S.C. § 544(b) ...............................................................................................5

11 U.S.C. §§ 544 through 549 ............................................................................7

11 U.S.C. § 548...........................................................................................*passim*

11 U.S.C. § 550...........................................................................................*passim*

11 U.S.C. § 550(a) ...............................................................................................8

11 U.S.C. § 550(a)(1).............................................................................................1

11 U.S.C. § 550(a), (b)..........................................................................................8

28 U.S.C § 157(b)(2)(H)........................................................................................2

28 U.S.C. § 158(a)(1) .......... 2

28 U.S.C. § 158(c)(2) .......... 2

Bankruptcy Act .......... 11

**Other Authorities**

Fed. R. Bankr. P. 8002(a)(1) .......... 2

S. Rep. No. 95 989 (1978) .......... 10

## STATEMENT OF THE ISSUE AND STANDARD OF REVIEW

Debtor Applied Machinery Rentals, LLC obtained a loan from a bank. Then, Debtor's principal, Garth E. McGillewie, Jr., had the loan proceeds deposited into his personal bank account. McGillewie transmitted a portion of these funds to the Internal Revenue Service to pay his tax liabilities. The issue before the Court is: Under 11 U.S.C. § 550(a)(1), was the IRS or McGillewie the initial transferee of these funds?

This Court reviews the Bankruptcy Court's determination of this question of law *de novo*. *Joseph v. Cooper*, 539 B.R. 489, 495 (W.D.N.C. 2015).

## STATEMENT OF APPELLATE JURISDICTION

28 U.S.C § 157(b)(2)(H) conferred the Bankruptcy Court with jurisdiction over this adversary proceeding, as it is a proceeding to determine, avoid, or recover a fraudulent conveyance. Because the United States appeals from the Bankruptcy Court's final order granting the Trustee's Motion for Summary Judgment (Dkt. 42, 50, 51), this Court has jurisdiction to hear this appeal. 28 U.S.C. § 158(a)(1); *In re Bestwall, LLC*, 99 F.4th 679, 685 (4th Cir. 2024).

The United States timely filed this appeal. The Bankruptcy Court entered its order granting summary judgment in the Trustee's favor on June 5, 2025. (Dkt. 51.) The United States then filed its notice of appeal on June 10, 2025 (Dkt. 56, 60), which is within the fourteen-day period provided by Fed. R. Bankr. P. 8002(a)(1). *See* 28 U.S.C. § 158(c)(2); *Engell v. Sheetz*, No. 2:16-cv-0005-BR, 2016 WL 3579011, at *1 (E.D.N.C. June 24, 2016).

## STATEMENT OF THE CASE

### A. Factual Background

Debtor was a South Carolina limited liability company, in the business of acquiring, distributing, leasing, and selling Merlo Telehandlers (a type of hydraulic machine). (Compl., Dkt. 1 at ¶ 9.)[1] Debtor's sole member, manager, and principal was McGillewie, who died in 2023. (*Id.* ¶¶ 10, 12, 24.)

On September 16, 2021, Debtor obtained a commercial loan from Security Bank & Trust Company. (*See generally* Loan Documents, Dkt. 10-1.) McGillewie negotiated and guaranteed the loan. (*Id.*) The principal amount of the loan was $1,520,036. (*Id.* at 2.) The Commercial Promissory Note and Loan Agreement listed the borrower as: Applied Machinery Rentals LLC. (*Id.*) That same day, Security Bank deducted $20,036 in fees from the loan amount and wired $1,500,000 to a SouthState Bank account with an account number ending in 0472 ("SouthState Account"). (Outgoing Wire Transfer, Dkt. 10-2.) The account holder for the SouthState Account was listed as: Garth E. McGillewie, Jr. (McGillewie Account Statement, Dkt. 10-3.) McGillewie used this account for personal purposes to make

---

[1] All citations noting a specific docket number refer to the docket of the adversary proceeding in this matter (No. 24-03014).

purchases at a wide variety of retailers, including gas stations, fast food restaurants, drug stores, liquor stores, nail salons, and clothing stores. (*See generally id.*)

On September 17, 2021, McGillewie withdrew $1,052,682.67 from this account and instructed SouthState to issue a cashier's check in that amount. (*Id.*; Cashier's Check, Dkt. 10-4.) The cashier's check listed the Internal Revenue Service as the payee, and McGillewie as the remitter. (Dkt. 10-4.) The Service received the check on September 20, 2021, and it applied the full amount to McGillewie's personal tax liabilities – specifically, his income tax liabilities for tax year 2016. (IRS Account Transcript, Dkt. 65-3.) The Service reduced McGillewie's income tax liabilities by the exact amount of the check (i.e., $1,052,682.67). (*Id.* at 5.) Shortly after this transaction, McGillewie transferred most of the remaining loan proceeds ($430,000) to Debtor's own bank account. (Dkt. 10-3 at 7.)

On July 17, 2024, Debtor filed its bankruptcy petition. (Debtor's Bankruptcy Schedules, Dkt. 65-5.)

### B. Procedural History

The Trustee initiated this adversary proceeding on April 11, 2024. (Dkt. 1.) In his Complaint, the Trustee sought to avoid and recover two transfers received by the

Service: (1) an $187,931.56 payment in April 2019; and (2) the $1,052,682.67 payment in September 2021.[2] (Dkt. 1 at ¶¶ 31, 61.)

On August 15, 2024, the Trustee moved for partial summary judgment as to the September 2021 transfer. (Trustee's Mot. for Summ. J., Dkt. 9.) The United States filed a cross-motion for summary judgment on September 20, 2024, asserting that the United States is a subsequent transferee that took the funds for value, in good faith, and without knowledge of the voidability of the transfer under § 550(b). (U.S.'s Cross-Mot. for Summ. J., Dkt. 65.) The Bankruptcy Court held an argument on the cross-motions on March 19, 2025. (Dkt. 35.)

On April 30, 2025, the Bankruptcy Court granted the Trustee's motion for partial summary judgment and denied the United States' cross-motion. (Mem. Order, Dkt. 42.) First, the Bankruptcy Court determined that McGillewie's 2021 payment to the Service was a transfer "of an interest of the debtor in property" under

[2] The Trustee sought to avoid the April 2019 transfer not under § 548, but under 11 U.S.C. § 544(b). (Dkt. 1 at ¶¶ 47-57.) However, in March 2025, the United States Supreme Court issued a decision in *Miller v. United States*, 604 U.S. ___, 2025 WL 906502 (2025). The Court held that 11 U.S.C. § 106(a)'s sovereign-immunity waiver does not abrogate sovereign immunity for underlying state-law claims that no actual creditor could have brought outside bankruptcy, for the purposes of 11 U.S.C. § 544(b). As a result, the parties filed a joint stipulation for voluntary dismissal. (Dkt. 39.) This joint stipulation dismissed the Trustee's claims related to the April 2019 transfer.

§ 548. (*Id.* at 9-14.) What is more, the Bankruptcy Court concluded that the funds remained Debtor's property after McGillewie transferred the funds to the Service. (*Id.* at 13-14.) Second, the Bankruptcy Court found that the Service was the initial transferee of the funds under § 550. (*Id.* at 14-20.)

The Bankruptcy Court entered a final judgment in this matter on June 5, 2025, and the United States timely appealed this ruling. (Notice of Appeal, Dkt. 56, 60.)

## SUMMARY OF THE ARGUMENT

The Bankruptcy Court erred in three critical respects. First, McGillewie did, in fact, exercise legal dominion and control over the funds before they were transferred to the United States. Thus, he was the initial transferee pursuant to *Bonded Fin. Servs. v. European Am. Bank*, 838 F.2d 890, 894 (7th Cir. 1988). *See In re Se. Hotel Props. Ltd. P'ship*, 99 F.3d 151, 156 (4th Cir. 1996) (adopting *Bonded*). Second, the Bankruptcy Court held that if the funds remained property of Debtor while in McGillewie's personal bank account, then the only transfer that could occur is the transfer to the Service. (Dkt. 42 at 14-19.) The Bankruptcy Court, however, applied the wrong test by supplanting the *Bonded* "legal dominion and control" test with an "interest of the debtor in property" test. The property in the account was Debtor's, but McGillewie became the initial transferee when he took dominion and control over those funds for his personal (not corporate) use. Third,

the Bankruptcy Court's approach to agency and fiduciary duty misinterprets McGillewie's role as Debtor's principal.

McGillewie gave the Service a cashier's check from his personal bank account, with himself listed as the remitter; in fact, the check contained no references whatsoever to Debtor. McGillewie, not the Service, was the initial transferee, and this transaction is not avoidable under § 548.

## ARGUMENT

### A. The Bankruptcy Court erred by failing to properly apply the "legal dominion and control" test.

In 11 U.S.C. §§ 544 through 549, Congress granted a trustee in a bankruptcy proceeding avoidance powers to "set aside certain types of transfers and recapture the value of those avoided transfers for the benefit of the estate." *Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 583 U.S. 366, 370 (2018) (cleaned up). To recover funds that have been fraudulently transferred within the meaning of 11 U.S.C. § 548, a trustee must prove that the transfer involved "an interest of the debtor in property." § 548(a)(1). In addition, a trustee must identify the transferees from which he can recover. § 550; *Se. Hotel Props. Ltd. P'ship*, 99 F.3d at 154. The Bankruptcy Court conflates these two separate requirements in error.

Section 550 permits recovery from an initial transferee, an entity for whose benefit a transfer was made, and a subsequent transferee of an initial transferee. § 550(a); *In re Meredith*, 527 F.3d 372, 375 (4th Cir. 2008). Unlike an initial transferee, a trustee may not recover assets from a subsequent transferee if the subsequent transferee took the funds: (1) for value; (2) in good faith; and (3) without knowledge of the voidability of the transfer. § 550(a), (b); *In re Nieves*, 648 F.3d 232, 234 (4th Cir. 2011). Important public policy justifications underly the distinction between an initial transferee and a subsequent transferee. Subsequent transferees "usually do not know where the assets came from and would be ineffectual monitors if they did." *In re Mortgage Stores, Inc.*, 773 F.3d 990, 997 (9th Cir. 2014) (quoting *Bonded*, 838 F.2d at 892-93).

The Fourth Circuit, like most circuits, applies the "legal dominion and control" test laid out in *Bonded*. *Se. Hotel Props. Ltd. P'ship*, 99 F.3d at 156. Under this test, "[a]n initial transferee is the first entity that has 'exercised legal dominion and control over the property.'" *In re Ballantyne Brands, LLC*, 656 B.R. 117, 164 (Bankr. W.D.N.C. 2023) (quoting *Se. Hotel Props. Ltd. P'ship*, 99 F.3d at 156). This test requires that an initial transferee "(1) have legal dominion and control over the property – e.g., the right to use the property for its own purposes, and (2) exercise this legal dominion and control." *In re Railworks Corp.*, 760 F.3d 398, 403 (4th Cir.

2014) (quoting *Grayson Consulting, Inc. v. Wachovia Sec., LLC*, 716 F.3d 355, 362 (4th Cir 2013)). Dominion and control exist if the recipient is able to use the funds for "whatever purpose he or she wishes, be it to invest in 'lottery tickets or uranium stocks.'" *Richardson v. I.R.S.*, 277 B.R. 875, 879 (1st Cir. BAP 2002) (quoting *Bonded Fin. Servs*, 838 F.2d at 894); *Se. Hotel Props. Ltd. P'ship*, 99 F.3d at 156.

**1. This case involves precisely the type of two-step transaction contemplated in *Bonded*.**

Under *Bonded*, a transfer that involves both an initial and subsequent transferee must have two steps: a transfer from the debtor to the initial transferee, and a transfer from the initial transferee and the subsequent transferee. The transfer in this case followed that structure.

McGillewie was the recipient of a transfer from Debtor. The Bankruptcy Code defines "transfer" as "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with (i) property; or (ii) an interest in property." 11 U.S.C. § 101(54)(D). Congress intended for this definition to be interpreted broadly. *In re Whitley*, 848 F.3d 205, 208 (4th Cir. 2017). As the corresponding Senate Report states: "[A]ny transfer of an interest in property is a transfer, including a transfer of possession, custody, or control even if there is no

transfer of title, because possession, custody, and control are interests in property." S. Rep. No. 95-989, at 27 (1978).

The Fourth Circuit has specifically considered the circumstances under which a deposit of funds into a bank account constitutes a transfer. In *Whitley*, an individual debtor deposited checks and received wire transfers into his personal checking account. 848 F.3d at 206-07. During bankruptcy, the trustee attempted to avoid these transactions under § 548, asserting that they were transfers from the debtor to his bank. *Id.* The Fourth Circuit held, in a narrow ruling, that these transactions were not transfers. *Id.* at 210.

In reaching this conclusion, the Fourth Circuit focused on two primary factors. First, the court examined the degree of control that the debtor was able to exercise over the funds after the transaction had taken place. *Id.* at 209-10. The court emphasized that for deposits such as the one before it, the transaction "[did] not change the debtor's possession, custody, or control of the property because the transactions result in only a substitution of the property for a corresponding credit . . . that may be redeemed by the debtor at any time." *Id.* at 209. Not only was the debtor "free to access those funds at will," but "any funds in the account were at all times part of the bankruptcy estate." *Id.* at 210; *see also In re Rollaguard Security, LLC,* 591 B.R. 895, 909 (Bankr. S.D. Fla. 2018). Second, the court examined

whether the transaction took place "in the regular course of business." *Whitley*, 848 F.3d at 208. In short, "if the deposition is in reality a deposit, made in good faith as such, . . . and not made as a cloak for a payment or other forbidden transaction, it is not a transfer within the meaning of the Bankruptcy Act." *Id.* (citing *Citizens' Nat'l Bank of Gastonia, N.C. v. Lineberger*, 45 F.2d 522, 527-28 (4th Cir. 1930)). In short, a debtor taking funds and putting it in their own bank account is not a transfer.

The *transfer* of funds to McGillewie's personal account stands in sharp contrast to the more general *transaction* described in *Whitley*. Debtor gained "an interest in property" regarding the funds when the loan documents were executed. But Debtor did not put the funds in its corporate bank account, which also existed at the time. Instead, McGillewie deposited the funds into his personal bank account and did not segregate them. Thus, a transfer took place to McGillewie.

When the funds were deposited into McGillewie's personal account, Debtor no longer "retain[ed] complete autonomy over the funds, with the unfettered ability to withdraw them, transfer them to other accounts, use them to write checks, or use them to make wire or other electronic payments." *See Rollaguard Sec., LLC*, 591 B.R. at 909. Nor were the funds transferred in the regular course of business. Rather than transferring the funds into Debtor's preexisting account, McGillewie deposited the funds into his personal account to be used for his own fraudulent purposes. Thus,

when the funds were deposited into McGillewie's account, the Debtor "part[ed] with . . . an interest in property" under § 101(54)(D), and a transfer took place.

This case involves precisely the type of "two-step" transfer contemplated in *Bonded*. 838 F.2d at 894. The Trustee ignores the practical realities of how a two-step transfer works when the initial transferee is an insider. In a similar factual scenario, a district court described the distinction between a one-step and a two-step transaction as follows:

> In a one-step transaction, the debtor's payment is made directly to the insider's creditor. The creditor is the initial transferee, and the insider is the entity for whose benefit the transfer is made. In a two-step transaction, the debtor gives a check to the insider, who then uses the funds to pay his own creditor. In the two-step transaction, the insider is the initial transferee and his creditor is the subsequent transferee.

*In re Whitacre Sunbelt, Inc.*, 200 B.R. 422, 426 (Bankr. N.D. Ga. 1996). Here, the transaction also involved two steps: a transfer of Debtor's interest in the loan proceeds to McGillewie, and a transfer of the loan proceeds from McGillewie to the Service. Thus, McGillewie was the recipient of a transfer.

The Bankruptcy Court acknowledges that "Debtor effectuated a 'transfer' under 11 U.S.C. § 101(54), when McGillewie caused the loan to be deposited into the SouthState Account." (Dkt. 42 at 19 n.12.) But the Bankruptcy Court then states as follows:

> However, 11 U.S.C. § 548 requires a transfer of "an interest of the debtor in property." As previously explained, the phrase "[t]he phrase 'interest of the debtor in property' 'is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings.'" . . . Since Debtor's interest in the proceeds of the loan was never transferred to McGillewie, Debtor's interest in the proceeds of the loan remained property that would have been part of the estate until it was transferred Defendant.

(*Id.*) With these two statements, the Bankruptcy Court contradicts itself, while also contravening *Bonded*, its progeny, and the Bankruptcy Code's broad definition of transfer. A transfer only meets the definition of § 101(54) if it involves the disposal of or parting with property *or an interest in property*. And yet, the Bankruptcy Court maintained that Debtor's interest in the loan proceeds is somehow a separate matter. This contradiction further underscores the fundamental flaws in the way the Bankruptcy Court reached its conclusion. Because this was a two-step transaction, the United States was the subsequent transferee, and the Court erred in finding that it was the initial transferee.

**2. McGillewie exercised legal dominion and control over the funds.**

When evaluating legal dominion and control in scenarios factually similar to this case, courts generally consider two possibilities: (1) whether the principal caused the debtor to transfer funds directly to the principal's creditor, or (2) whether the principal caused the debtor to transfer funds to the principal, who then transferred

funds to the principal's creditor. The distinction between these two possibilities is quite significant, and it is most clearly illustrated in *Bonded*.

In *Bonded*, the corporate debtor sent a check from its bank account to the bank of its principal with a note directing the bank to deposit the check into the principal's account. 838 F.2d at 891. The principal then held the funds in his bank account for ten days before transferring the funds to a third party to satisfy a personal debt. *Id.* The Seventh Circuit determined that the principal was the initial transferee. *Id.* at 896. Significantly, the court also presented a hypothetical:

> If the note accompanying Bonded's check had said: "use this check to reduce Ryan's loan" instead of "deposit this check into [Ryan]'s account," § 550(a)(1) would provide a ready answer. The Bank would be the "initial transferee" and Ryan would be the "entity for whose benefit [the] transfer was made.

*Id.* at 892. Numerous other courts have emphasized this distinction as well. Some of the most notable examples, all from jurisdictions applying *Bonded*, are described below:

- ***Rupp v. Markgraf*, 95 F.3d 936 (10th Cir. 1996)** – A corporation's principal instructed a bank to issue a cashier's check from the corporation's account, made out to the principal's creditor. Finding that the principal was not the initial transferee, the court emphasized that "[t]he funds were never deposited into any personal account controlled by [the principal] and [the principal] never had

dominion and control over the funds." *Id.* at 940. The court also emphasized that the principal "could not personally access the funds represented by the cashier's check."[3] *Id.*

- ***In re Chase & Sanborn Corp.*, 904 F.2d 588 (11th Cir. 1990) –** A principal caused the debtor to wire funds directly to a creditor, with instructions to use the funds to reduce the principal's loan balance. *Id.* at 599. The court determined that the creditor was the initial transferee and emphasized that in the case before it, there "was no interregnum, as in *Bonded*, during which the funds sat in the [principal's] account subject to his use or control; indeed, the two transfers at issue did not pass even momentarily through [the principal's] account." *Id.* at 600.

- ***In re Walldesign*, 872 F.3d 954 (9th Cir. 2017)** – A corporation's sole shareholder, director, and president opened a secondary bank account in the

[3] The Bankruptcy Court misapplied *Rupp* when it used *Rupp* to support the proposition that McGillewie lacked legal dominion and control over the funds. (*See* Dkt. 42 at 18 (quoting *Rupp*, 95 F.3d at 941)). In *Rupp*, the court explained that "[t]he extent to which a principal has de facto control over the debtor before the funds are transferred from the debtor, and the extent to which the principal uses this control for his or her own benefit in causing the debtor to make a transfer, are not relevant considerations in determining the initial transferee under § 550." *Rupp*, 95 F.3d at 941. But this statement only indicates that a principal who exercises de facto control over a debtor *before* a transfer does not necessarily exercise legal dominion and control over the funds *after* the transfer.

corporation's name. *Id.* at 960. The principal paid personal debts with checks drawn on this secondary account. *Id.* The court determined that because the principal had simply misdirected the corporation's funds to a third party and lacked "the ability to freely appropriate" the funds, the principal was not the initial transferee. *Id.* at 966. Significantly, the court emphasized that a principal could establish legal dominion and control over funds "by first directing a transfer into his or her personal bank account and then making the payment from his personal account to the creditor." *Id.* at 964 (quoting *In re Video Depot, Ltd.*, 127 F.3d 1195, 1197 (9th Cir. 1997)).

- ***In re KZK Livestock*, 191 F.3d 456 (Table) (7th Cir. 1999)** – A corporation's principal caused the corporation to issue checks for deposit into the principal's personal commodity trading account. *Id.* at *3. The funds spent four days in the account before the principal transferred them to another corporation. *Id.* The court held that during those four days, the principal exercised legal dominion and control over the funds and was thus the initial transferee. *Id.* at *8. The court also observed that "not all the funds which were involved in the [challenged] transfer were subsequently transferred to [the other corporation]." *Id.* at *7. This factor, the court indicated, "reinforce[d] this Court's conclusion that [the principal] was the initial transferee, as he manifested control over the funds and, in fact, diverted a portion of the funds." *Id.*

When viewed in light of these cases, McGillewie clearly falls into the second of these two categories: he is a principal who caused a debtor to transfer funds to himself, and he then transferred those funds to his personal creditor. McGillewie is the initial transferee and the United States is the subsequent transferee.

On this point, the Bankruptcy Court misapplied *In re Fox Bean Co., Inc.*, 287 B.R. 270 (Bankr. D. Idaho 2002).[4] The "personal" bank account involved in *Fox Bean* is quite different from McGillewie's. In that case, the debtor's principal opened an account in his name "doing business as Fox Bean Company," the trade name of his sole proprietorship. *Id.* at 274. When the principal incorporated debtor Fox Bean Company, Inc. the following year, he "intended all of his business operations previously conducted as a sole proprietorship to be taken over and subsumed into the operations of the [debtor]." *Id.* Significantly, he "never established a corporate bank account for use in [the debtor's] business operations, but instead continued to use [the initial account] as the business account for [the debtor]." *Id.* The debtor's accounts receivable were deposited in this account. *Id.* at 275; *see also id.* at 284 (noting that bank personnel understood that the principal "used this checking

[4] When affirming the district court's decision in this case, the Ninth Circuit provided no opinion, stating only that "Appellant fails to raise relevant arguments on appeal." 144 F. App'x 697 at *1 (9th Cir. Sept. 29, 2005).

account exclusively to operate his business"). In contrast, McGillewie established separate bank accounts for himself and Debtor. Moreover, after McGillewie transferred funds to the Service, he transferred much of the remaining loan proceeds to Debtor's bank account for use in its operations. The Bankruptcy Court's reliance on *Fox Bean* is flawed.

### B. The Bankruptcy Court misconstrued the "interest of the debtor in property" requirement of § 548.

Rather than applying the *Bonded* test by analyzing the status of the transferee, the Bankruptcy Court focused on whether the transfer involved an interest of the debtor in property. (Dkt. 42 at 9-14.) This is the wrong standard.

To be avoidable under § 548, a transfer must involve "an interest of the debtor in property." § 548(a)(1). The parties have never disputed that the funds at issue here meet this requirement. But the Bankruptcy Court takes this requirement a step further. Rather than allowing *Bonded* to guide its analysis, the Bankruptcy Court analyzed whether "the funds in McGillewie's account *remained* the property of Debtor." (Dkt. 42 at 14 (emphasis added).) The Bankruptcy Court then treats this as determinative, concluding that "[b]ecause Debtor's property interest in the proceeds of the loan remained even after the funds were deposited in McGillewie's account,

[the Service] was a direct and initial transferee of property in which Debtor continued to hold an interest." *Id.* at 18.

Whether the funds in McGillewie's account remained the property of the Debtor is not relevant. *Even if* the funds remained the property of the Debtor, McGillewie is the initial transferee. Property of the debtor is "property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." *Begier v. I.R.S.*, 496 U.S. 53, 58 (1990); *see also Ivey v. First Citizens Bank & Trust Co.*, 539 B.R. 77, 82 n.9 (M.D.N.C. 2015) ("Although [*Begier*] analyzed § 547(b), the terminology in § 548 is the same and thus the Court's holdings regarding 'an interest of the debtor in property' apply to both sections equally."). The funds that McGillewie held in his personal bank account meet this definition, and in that sense, they would have remained property of Debtor no matter where they are held. But the Bankruptcy Court allowed this truism to supplant the *Bonded* dominion-and-control test. (Dkt. 42 at 18.) This was an error.

In this vein, the Bankruptcy Court again critically misconstrued the Idaho bankruptcy court's analysis in *Fox Bean*. (*See* Dkt. 42 at 12.) There, the court was tasked with answering a narrow question: "whether a debtor corporation retains an interest in its funds when they are deposited by the corporation's agent into the agent's personal bank account." *Fox Bean*, 287 B.R. at 277. The court reached the

unremarkable conclusion that "a corporation retains at least an equitable interest in any corporate property held on its behalf by its officer or director." *Id.* at 280. But the Idaho bankruptcy court's analysis of the more relevant question for present purposes – whether the principal was the initial transferee – is more revealing. With minimal analysis, the court determined that the defendant was the initial transferee because funds had been transferred from the debtor to the defendant "to pay the debt of another" (i.e., the principal). *Id.* at 281. Later in its decision, however, the court changes course:

> That Defendant was a mediate transferee, not the initial transferee, under these facts for purposes of § 550(a)(2) seems logical when measured by the standard adopted by the Ninth Circuit's in *In re Video Depot,* 127 F.3d at 1199 (noting other circuits have held a principal may establish legal control and dominion by first directing a transfer into his or her personal bank account and then making the payment from his personal account to the creditor). But, for the reasons set forth below, the Court confidently concludes Defendant knew the March 14 transfer was avoidable. As a result, Defendant cannot benefit from the restrictions on liability found in § 550(b)(1).

*Id.* at 283. Thus, the Bankruptcy Court below relies heavily on a decision which (1) concedes that the defendant may, in fact, have been a subsequent transferee rather than an initial transferee; (2) analyzes the "interest of the debtor in property" requirement only because of a unique factual scenario; and (3) never cites *Bonded*, the test the Bankruptcy Court must apply in this case.

### C. McGillewie did not receive the funds as an agent of the Debtor.

The Bankruptcy Court maintained that because McGillewie was acting as the Debtor's agent and owed a fiduciary duty to Debtor, he could not be the initial transferee. But the Bankruptcy Court's approach to agency and fiduciary duty in the § 548 context lacks a limiting principle.

The Bankruptcy Court relies on the fact that South Carolina law required a principal like McGillewie to "hold as trustee for [the Debtor] any property . . . derived by the members in the conduct . . . of the company's business." (Dkt. 42 at 10-11 (*citing* S.C. Code Ann. § 33-44-409(b)(1)). But this would be true regardless of whether the transfer was avoidable under § 548. The fact is, corporate cheats like McGillewie invariably breach their fiduciary duty to their business entity when they misappropriate funds to pay their personal debts. The violation of fiduciary responsibilities like that outlined in the South Carolina Code, or the violation of loan provisions like that related to the Merlo telehandlers, are best addressed through causes of action like conversion or breach of fiduciary duty. *See, e.g.*, *Fox Bean*, 287 B.R. at 280 (noting that under Idaho state law, conversion is the appropriate remedy when an agent of a corporation misuses corporate funds); *Rupp*, 95 F.3d at 941 (stating that principals can "cause their corporations to use those funds appropriately or inappropriately" and that "[t]he distinction is only relevant to whether the

principal's conduct amounted to a breach of duty to the corporation"). Ultimately, "outright fraud alone cannot bring a transaction within the avoiding powers of the Bankruptcy Code – the baseline avoiding requirements of the statute must still be met." *Mann. V. LSQ Funding Group., L.C.*, 71 F.4th 640, 648 (7th Cir. 2023) (citing *In re Whitley*, 848 F.3d at 208). In other words, to qualify as a voidable fraudulent transfer that can be recovered, the Trustee must still meet the requirements of §§ 548 and 550.

The Bankruptcy Court's approach allows the Trustee to reap the benefits of classifying McGillewie as an agent or mere conduit while sidestepping the relevant case law.[5] Under the "mere conduit" defense, a recipient of funds is not an initial transferee if it is simply moving funds as an agent of the debtor. This defense is an equitable remedy "designed to protect innocent transferees." *E.g.*, *In re Pretty Girl, Inc.*, 644 B.R. 298, 310 (Bankr. S.D.N.Y. 2022). Thus, to qualify as a conduit, a

[5] The Trustee maintains that the United States "cites no legal authority for its apparent position that the 'mere conduit' concept cannot be applied to analyze similar issues in an agency relationship outside the context of an affirmative defense." (Dkt. 34 at 3.) Yet the single case the Trustee cites in support of this proposition certainly does not expand the "mere conduit" defense in the way the Trustee advocates. *See In re Redf Mktg., LLC*, 536 B.R. 646, 661 (Bankr. W.D.N.C. 2015). And as explained below, numerous courts have place well-reasoned restrictions on the parameters of this defense.

recipient must have acted in good faith. *In re Harbour*, 845 F.2d 1254, 1258 (4th Cir. 1988); *In re Whitley*, 2013 WL 486782, at *5-8 (Bankr. W.D.N.C. Feb. 7, 2013); *see also In re Int'l Admin. Servs., Inc.*, 408 F.3d 689, 705 (11th Cir. 2005) ("[T]he conduit rule presumes that the facilitator of funds acts without bad faith, and is simply an innocent participant to the underlying fraud."). In keeping with this purpose, courts typically limit this defense to commercial, financial, or professional intermediaries that serve as "arms-length third parties performing a business function." *Pretty Girl, Inc.*, 644 B.R. 298 at 311. A bank simply moving funds for the debtor is a prototypical conduit. *See, e.g.*, *In re Jenkins*, 2013 WL 4805731, at *3 (Bankr. W.D.N.C. Sept. 6, 2013); *accord In re Coutee*, 984 F.2d 138, 141 (5th Cir. 1993) (finding that a law firm acted as a conduit when it deposited certain funds into a separate trust account before transferring them to client). In such scenarios, "the likelihood of bad faith . . . is lessened where the defendant is a commercial enterprise handling transactions in a routine fashion." *In re Harbour*, 845 F.2d at 1257.

The Trustee's portrayal of McGillewie as a mere conduit turns the conduit test on its head. When the Fourth Circuit articulated this test, it stated that "a party cannot be an initial transferee if he is a 'mere conduit' for *the party who had a direct business relationship with the debtor*." *Se. Hotel Props. Ltd. P'ship*, 99 F.3d at 155

(emphasis added). The way this test was stated in *Bonded* assumes a similar structure: "When A gives a check to B as an agent for C, then C is the 'initial transferee'; the agent may be disregarded." *Bonded*, 838 F.2d at 893. In either statement of the test, the conduit generally acts as a good-faith agent of the entity that conducted business with the debtor, not as an agent of the debtor itself. But in this case, the parties agree that McGillewie was not a good-faith agent. He had the direct business relationship with the Debtor. *See In re Appalachian Finishing Works*, 244 B.R. 771, 775 (E.D. Tenn. 2000) (concluding that an entity was not a mere conduit specifically because "it was the party who had a direct business relationship with the debtor").

The Trustee affirmatively alleges that McGillewie had fraudulent intent. (Dkt. 1 at ¶¶ 12, 53.) He is not a "well-intentioned" third party, but instead, an insider with "intimate and thorough knowledge of the transactions and their desired [fraudulent] effect." *See In re Int'l Admin. Servs., Inc.*, 408 F.3d 689, 706 (11th Cir. 2005). Given McGillewie's clear show of bad faith, classifying him as a conduit would starkly contravene the purpose of this exception to § 550.

Because McGillewie is decidedly not a mere conduit for the funds, he is the initial transferee. His status as the initial transferee is supported by the dominion and control he exercised over the funds. Perhaps most importantly, McGillewie

commingling the loan proceeds with his personal funds. When a transferee commingles funds in this manner, it "destroys the mere conduit defense because it demonstrates dominion and control over the funds." *In re Pretty Girl, Inc.*, 644 B.R. at 310. He could, and did, use some of the remaining funds for a variety of personal purposes. Moreover, once the funds were deposited into his personal bank account, McGillewie had "the authority to prevent another from using the funds for their purposes." *See In re Jenkins*, 2013 WL 4805731, at *3 (Bankr. W.D.N.C. Sept. 6, 2013). Critically, McGillewie's authority to prevent others from accessing the funds included Debtor itself; Debtor only had access to the funds once McGillewie transferred a portion of the remaining loan proceeds to Debtor's own bank account. This clear display of dominion and control over the funds further supports McGillewie's position as the initial transferee.

## CONCLUSION

The United States' position is consistent with the public policy considerations at the foundation of § 550. "Unlike subsequent transferees, who 'usually do not know where the assets came from and would be ineffectual monitors if they did,' initial transferees tend to have relationships and influence with the debtor." *Mortgage Stores, Inc.*, 773 F.3d at 997 (quoting *Bonded*, 838 F.2d at 894). Thus, when a court determines that an entity is an initial transferee, indicia of the debtor's

claim to the property are generally present. *See, e.g.*, *Rupp*, 95 F.3d at 937 (cashier's check used to pay principal's creditors "stated on its face that it was purchased by [the debtor]"); *Walldesign*, 872 F.3d at 960 (checks used to pay principal's creditors all bore the debtor's name); *Fox Bean*, 287 B.R. at 283-84 (documenting the numerous reasons the principal's creditor should have known the true source of the funds); *Video Depot*, 127 F.3d at 1199 (emphasizing that transferee's "receipt of a cashier's check clearly purchased by [the debtor] subjects it to a burden of inquiry that it may not have had upon receipt of a check from [the principal's] personal account").

No such indicia are present in this case. The Service received a check from McGillewie's personal bank account – the same account he used to pay for expenses ranging from alcohol to services at nail salons. (Dkt. 10-3.) Given these facts, holding the Service strictly liable as an initial transferee would be profoundly out-of-step with the balance Congress struck when it enacted § 550. Because McGillewie was the initial transferee of the funds, the Bankruptcy Court's decision should be reversed.

[*Signatures on following page*]

Date: August 27, 2025

/s/ *Anna A. Miller*
ANNA A. MILLER
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 227, Ben Franklin Station
Washington, D.C. 20044
Telephone: 202-514-6068
Email: Anna.A.Miller@usdoj.gov
DC Bar No. 252760

## CERTIFICATE OF COMPLIANCE

### Certificate of Compliance with Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

This document complies with the word limit of Fed. R. Bankr. P. 8015(a)(7) because, excluding the parts of the document exempted by Fed. R. Bankr. P. 8015(a)(7)(B)(iii):

[X] this document contains 7,080 words, **or**

[ ] this brief uses a monospaced typeface and contains _____ lines of text.

/s/ Anna A. Miller

## STATEMENT REQUESTING ORAL ARGUMENT

The United States believes that oral argument is appropriate in this case. The case meets the standards typically considered for oral argument: (a) the appeal is not frivolous; (b) the Court has not yet authoritatively decided the specific legal issue on appeal in this matter; and (c) oral argument will significantly aid the decisional process. Accordingly, the United States requests that the Court set this case for oral argument. *See* Fed. R. Bankr. P. 8019(a).

## CERTIFICATION REGARDING THE USE OF ARTIFICIAL INTELLIGENCE

The undersigned trial attorney certifies as follows:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard online legal search sources Westlaw, Lexis, FastCase, and Bloomberg.

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

*/s/ Anna A. Miller*
ANNA A. MILLER
Trial Attorney
U.S. Department of Justice, Tax Division

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of August, 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification to all those registered to receive it.


*/s/ Anna A. Miller*
ANNA A. MILLER
Trial Attorney
U.S. Department of Justice, Tax Division